**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALBERT CECCONE, *for himself and on behalf of all similarly situated individuals,* | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:13-cv-1314 KBJ/JMF ) |
| EQUIFAX INFORMATION SERVICES, LLC | ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S PROPOSAL REQUIRING EQUIFAX TO PRODUCE A 5% SAMPLE OF ITS DATABASE**

COMES NOW the Plaintiff, Albert Ceccone, for himself and on behalf of all similarly situated individuals, by counsel, and pursuant to the Court's August 25, 2014 Minute Order, he submits this proposal to the Court requiring Equifax to produce a 5% Sample of its database.

**OVERVIEW**

Plaintiff has brought this class action alleging that Equifax uniformly reports District of Columbia Recorder utility liens as unpaid when the same publically available database[1] from which it obtained the original liens also reported that the lien was released. Plaintiff has downloaded the list of consumers who the District of Columbia Recorder's website reported as having a water lien and a water lien release, provided it to Equifax and then asked: tell us if you reported these consumers with the lien as well as the lien release, and then tell us when you starting doing so (if at all). Attached as Exhibit "A" is a sample of the publically available list of lien releases.

---

[1] https://portal3.recordfusion.com/countyweb/login.do?countyname=WashingtonDC

The present dispute is entirely a creation of Equifax for this litigation.   It claims a burden about nearly every document category in nearly every case.[2]   And it is refusing to stipulate to an objective truth and the single proof issue that Plaintiff seeks these files to establish:  ***Equifax' files are sufficient to identify from the list of D.C. water lien release consumers those for whom reported the lien without the release after that release was already showing in the public record.***

Plaintiff has offered a range of compromises.  We would take the files for these consumers and then – ourselves – process the data.  Or we would take a stipulation that this could be done if the class is certified.  Or we would take a sample of 1% of these identified consumers.  Or just 1,000.   Or Plaintiff would accept just the Plaintiff's own files if Equifax would agree that it was representative of the documents and data otherwise maintained as to other consumers.   Plaintiff offered to use only the current file for putative class members if Equifax would stipulate to its reliability for this task.  And lastly, Plaintiff suggested that Equifax produce its "5% sample" maintained and saved every single month.

To each, Equifax refused.   To do otherwise likely concedes ascertainability.   If it loses that argument, it has little else left.

The Court has instructed Plaintiff to provide for its suggested "5% sample" compromise, a proposal describing:

> (1) the documents Defendant would be required to furnish to the third party administrator,
>
> (2) the process and analysis to be undertaken by the third party administrator, and

---

[2] For example, just last week, it fought and lost similar arguments regarding its archived frozen scans and numerous other document categories. *Tamblay v. Equifax Info. Servs.*, Case No. 1:14-cv-130 (E.D. Va. 2014), Mot. Compel Hr'g Tr., Aug. 29, 2014 (attached as Exhibit B).

> (3) the estimated cost to be incurred by Defendant in furnishing the documents to the third party administrator.

Minute Order, August 25, 2014.  Plaintiff provides his position herein.

Responding to this Order is difficult because a meaningful substantive response will require Plaintiff's counsel to disclose deposition testimony and documents produced to present Plaintiff's counsel in unrelated Equifax cases in which Equifax branded testimony with a "confidential" designation pursuant to a discovery protective order.  For example, in *Terri N White et al v. Experian Information Solutions Inc., et al*, Case no. 05-cv-01070 (C.D. Cal.), Equifax opposed class certification in part by creating a detailed study of changes in a consumer's credit score between one time period and another (before and after bankruptcy).  To do so, Equifax used its existing "5% sample" of its entire database.  It creates and saves that database every month and uses it for its (non-litigation) business purposes.  Similarly, in *Donna Soutter v. Equifax Information Services, LLC*, Case no. 3:10CV00107 (E.D.Va.), present Plaintiff's counsel deposed Margaret Leslie, the chief Equifax employee who testifies in FCRA cases and runs the data department that handles Equifax's archives (frozen scans).  Equifax's present counsel branded the testimony as confidential in that deposition:

> MR. LOVE: And -- and if I may, Equifax is designate -- designating the testimony concerning frozen scans and the frozen scan process as subject to the protective order.

Deposition of Margaret Leslie, August 11, 2010, page 75:4-7.

However, to materially respond to the Court's instructions, Plaintiff's counsel would need to call these former deponents, Equifax employees for examination to restate their previous testimony or obtain Equifax's consent to use the previous depositions in this case under a protective order in this Court.

3

The uncontroversial details as to how Equifax can manipulate the sample data and whether or not it is true that Equifax employees have provided the sample and converted it to useful form in a matter of days – with limited personnel demands – remain protected by these same depositions. Similarly, the details regarding the alternate creation of a new 5% sample from Equifax's "frozen scan" archive tapes are fully contained in the previous deposition of Ms. Leslie.  Plaintiff would then supplement this proposal with this greater detail.

Plaintiff's counsel awaits Equifax's position on such a proposal.

## PLAINTIFF'S PROPOSAL

1.  **Documents Defendant would be required to furnish to the third party administrator.**

    a.  **Initially**, **Equifax would furnish a "Full File Format" output of its monthly "5% Sample" of the Equifax database for the months between January 2008 to the present**

Plaintiff proposes that Equifax do as it has previously done for its own defense in other cases – convert its monthly "5% sample" file – a file it already creates in its ordinary operations - into its machine-readable credit report so that it may be analyzed in this case. This format – the "Full File Format" or "FFF" output is Equifax's standard format for a credit file.  When Equifax wants to access this data, it's internal data employees can run a simple script to make the conversion.

Plaintiff proposes that the database be exported to McGladrey in either Excel format or as a SQL Server export file.

If there are no examples of a D.C. water lien consumer within this national sample, Plaintiff proposes the following alternative to cost effectively create a 5% sample consisting only of D.C. residents with a released D.C. water lien.

**b. Equifax would furnish its monthly "frozen scans" for 5% of the 11,000 consumers previously identified by Plaintiff as subject to a water lien showing as released in the public record.**

Plaintiff proposes to create a 5% sample of the archived credit files for D.C. residents with a released D.C. water lien.  There are approximately 11,000 such consumers.  That means Equifax would need only provide access to 550 consumer files via its "frozen scan" archive database.  Plaintiff's proposal is that Equifax provide the monthly archived frozen scans for all D.C. residents to McGladrey.   The Administrator would then determine the subset of consumers that match the list of names previously obtained from the District of Columbia Recorder's website, with a released D.C. water lien.   Finally, McGladrey would generate a 5% sample of these credit files.

There are at most 11,000 putative class members, the number of persons with a released D.C. water lien that Equifax may or may not have correctly reported.[3]  Statistically therefore, there is a significant chance that none of the 11,000 class members would be included in an ordinary 5% sample of Equifax's entire 200 million person national database.   Still, despite its limited chance of success, Plaintiff's counsel has actual knowledge that the "5% sample" is simple and resource-inexpensive to obtain, output and use.  Therefore, the use of the "5% sample" files is suggested as a first attempt in the hope that it can satisfy Equifax's litigation position that producing any other data would be burdensome.

---

[3] Plaintiff has produced a list of these consumers to Equifax.  Plaintiff believes that Equifax never picked up the lien releases.   This belief is based on the substantial dearth of evidence that it even had a means or process to do so.

However, in the event that none of the 11,000 putative class members are amongst the particular credit files used by Equifax to create its national sample, then the Parties would be back to the position of needing an alternative.   Equifax cannot fairly stand on its refusal to either produce data or stipulate that data could be produced.

Accordingly, if the existing "5% sample" files do not include the files/reports for any of the 11,000 putative class members, then Plaintiff proposes that Equifax produce the monthly credit files from January 2008 to the present that it archives each month for every single consumer file – its "frozen scans."

As the Circuit Court of Florida's Ninth Judicial District in *Williams v. Equifax Information Solutions* explained when confronted with a similar argument from Equifax:

> The frozen scans are snapshots of those reports and show all the information in Equifax's various files … for every month [.] This information is invaluable to plaintiff's case because plaintiff does not have credit reports for all those months.

 (Exhibit C, Williams Discovery Order).

As offered above, Plaintiff's counsel has a detailed knowledge – and evidence from Equifax testimony – regarding how the frozen scan archives are maintained, accessed, manipulated and searched.   Without revealing confidentially designated details, the known non-confidential reality is as follows:

Each month, Equifax makes an archived saved copy of its entire credit file database. It refers to both the archived electronic copy as well as the paper outputs as "frozen scans." It saves each month on tape.   Plaintiff knows where these tapes are saved.   Equifax routinely accesses these frozen scans for its litigation department's use in defending consumer FCRA claims.   The expense of accessing frozen scans is in searching through an entire month across the full national database.    This burden and expense is dramatically

reduced if the "search for file" step looks only for consumers in a specific zip code or state. Further, Equifax has stated that the burden of sorting and searching the files once culled is minimal.  Plaintiff knows the format in which the archive is saved.  A search and output for only the files for consumer's residing in the District of Columbia could be saved on a single disk.  And Plaintiff also knows the data format – one that can be easily accessed – in which the produced archives would be saved.

The facts and substance to evidence and further detail the previous paragraph are all contained in the Leslie deposition previously identified.  Further, Plaintiff has culled the relevant testimony in that deposition down to ten pages.  If the Court orders its production by either Party, Plaintiff's counsel in this case believes he would be permitted to produce it without violating the Protective Order in *Soutter*.

**2.  McGladrey would protect the security of the Equifax data and perform a search to determine if any putative class members (consumer's with an incorrectly reported unreleased D.C. Water lien) are included within Equifax's "5% Sample."**

McGladrey would cull the "frozen scan" archive files for D.C. residents to create a 5% sample of those residents on the list previously provided by Plaintiff to Equifax of persons with a released D.C. water lien. As the Plaintiff has previously explained, in an unrelated but more complex FCRA class case, Plaintiff's counsel has retained McGladrey – a respected national accounting firm and a top-end Class Action Administrator –to warehouse and analyze the entire "Results Reported" database of CoreLogic, a national background check company.

As in the previous instance (*Henderson v. CoreLogic*), McGladrey would extract the credit files for each consumer who has a D.C. water lien in his or her credit file.  The Administrator would then notify both Parties and further extract the history of the D.C.

water lien tradeline.   The results for each such sample consumer would be provided to the Parties under a protective order.

**3.     Exporting the "5% Sample" file is nearly cost-free for Equifax.**

Doing so would be almost entirely cost-free.  In previous litigation, Equifax has demonstrated and acknowledged that it can accomplish a full "FFF" conversion and production of its monthly "5% sample" files in a matter of days, with limited personnel hours.[4]  Further, it has testified about the expense – or lack thereof – in accessing, producing and even analyzing the "frozen scan" archive when that output is first cut to consumers in a specific state or zip code.  It can be searched in a matter of seconds.  The expense is minimal.  Plaintiff's counsel will certainly be able to provide in support the deposition testimony of Margaret Leslie if ordered by this Court to do so or if Equifax will consent to its use under this Court's protection.

Additionally, Equifax has previously acknowledged that its primary expense is obtaining the first cut of relevant archived files from its third party data vendor.  Plaintiff agrees to pay the reasonable actual cost charged to Equifax in the ordinary course by that vendor (subject to direct verification with that vendor and review of existing pricing).  Thus even the minimal cost to Equifax will be absorbed by Plaintiff.

Equifax's previous declaration claiming a burden or cost for accessing frozen scans is misleading.  The expense may be incurred if Equifax does its own file by file production or spends man hours processing or reading data manually.  But its most knowledgeable employee in this regard – Margaret Leslie – confirmed that Equifax's present claim is

---

[4] As above, if Equifax tries to suggest otherwise, Plaintiff's counsel will necessarily need to depose (re-depose actually) Equifax employees Lena Kantor, Sherry Harper and Myra Hart, or obtain Equifax's agreement to the use of their earlier depositions in this case.

untrue.  And if Equifax simply produces the full archive of D.C. residents, that expense is not incurred by Equifax.

Regardless, Equifax's cry of burden and expense because of how it claims to have stored its data is not fairly considered in this dispute. "Sometimes in an effort to delay or defeat the litigation, the defendant will assert that the information is not readily available from its records or that retrieving the information is burdensome. This may or may no be the case. […] [T]he fact that a business maintains records in a manner that makes it difficult to retrieve information does not relieve it from the obligation to do so." National Consumer Law Center, CONSUMER CLASS ACTIONS, Sixth Edition (2006), Section 7.1.2.5 *Discovery Directed to Identification of Class Members*, p. 97.  *Accord Kozlowski v. Sears, Roebuck and Co*., 73 F.R.D. 73. 76 (D.Mass. 1976) ("The defendant may not excuse itself from compliance with Rule 34 by utilizing a system of record-keeping that conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition."); *See also In re Brand Name Prescription Drugs Litig*., 1995 U.S.Dist. LEXIS 8281 (N.D. Ill. 1995); *Baine v. Gen. Motor Corp.*, 141 F.R.D. 328, 331 (M.D. Ala. 1991).

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court adopt his proposal and compel Equifax to produce its 5% Sample to McGladrey as its third party administrator for review and analysis.

Respectfully submitted**,**
**ALBERT CECCONE**

By:_____/s/_____
            Of Counsel

Kristi Cahoon Kelly, DC No. 974872
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Tel:     (703) 424-7572
Fax:     (703) 591-0167
kkelly@ kellyandcrandall.com

Leonard A. Bennett, *Admitted Pro Hac Vice*
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:     (757) 930-3660
Fax:     (757) 930-3662
lenbennett@clalegal.com

Matthew J. Erausquin, *Admitted Pro Hac Vice*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:     (703) 273-7770
Fax:     (888) 892-3512
matt@clalegal.com

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of September, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Brian R. Meiners
KING & SPALDING LLP
1700 Peunsylvania Avenue, NW, Suite 200
Washington, D.C. 20006-4707
Telephone: 202-737-0500
Facsimile: 202-626-3737
Email: bmeiners@kslaw.com

Barry Goheen
J. Anthony Love
Ian E. Smith
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Telephone: 404 572-4600
Facsimile: 404 572-5100
Email: bgoheen@kslaw.com
Email: tlove@kslaw.com
Email: iesmith@kslaw.com

                                        /s/
                         Kristi Cahoon Kelly, DC No. 974872
                         KELLY & CRANDALL, PLC
                         4084 University Drive, Suite 202A
                         Fairfax, VA 22030
                         Tel:    (703) 424-7572
                         Fax:    (703) 591-0167
                         kkelly@ kellyandcrandall.com
                         *Counsel for the Plaintiff*