IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN
AND FOR ORANGE COUNTY,
FLORIDA

CASE NO.: 48-2003-CA-9035-O

ANGELA P. WILLIAMS,

      Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES LLC,

      Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS AGAINST EQUIFAX FOR

## WILLFUL DISCOVERY VIOLATIONS

      This matter having come before the court on November 19, 2007, the Honorable George

A. Sprinkel IV presiding, as to Plaintiff's Motion for Sanctions Against Equifax for Willful

Discovery Violations, and the Court having considered Plaintiff's Motion for Sanctions Against

Equifax for Willful Discovery Violations, Plaintiff's Notice of Filing Excerpts of the August 9,

2007, and August 27, 2007, Depositions of Annette Simpson, and Excerpt of the Transcript of

August 23, 2007 Proceedings Held Before Judge Sprinkel in Support of Plaintiff's Motion for

Sanctions Against Equifax for Willful Discovery Violations,  Defendant Equifax Information

Service LLC's Response in Opposition to Plaintiff's Motion for Sanctions, Plaintiff's Reply to

Defendant Equifax's Response to Plaintiff's Motion for Sanctions, the Affidavit of Kachelle

Baxter, and after reviewing the record and arguments of counsel, hereby makes the following

factual findings and orders as follows:

      Defendant, EQUIFAX INFORMATION SERVICES LLC ("Equifax"), is in violation of

this Court's Order on Plaintiff's Motion to Compel Discovery Responses, signed December 13,

2006, for failure to timely provide all frozen scans as directed by this Court. A frozen scan is a snapshot of a credit report taken near the end of the month by Equifax. It is very useful in determining what was on the credit report at that time as well as which information is being reported by Equifax to third parties regarding Plaintiff. Frozen scans are at the heart of Plaintiff's case against Equifax. Frozen scans can be used to help show, among many other things, that Equifax violated 15 U.S.C. Section 1681e(b) by not following reasonable procedures to assure maximum possible accuracy. They can also show that Angela Williams' credit information was given to creditors or prospective creditors of Angelina Williams on many occasions. See 1681b.

Generally, disobedience of any lawful order of the court constitutes contempt of the Court's authority. When a party disobeys an order of the Court, various sanctions may be imposed by the court. The Court finds that willful or deliberate refusal to obey a court order by Equifax. Fla.R.Civ.P. 1.380(b)(2) states, "If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule . . ., the court in which the action is pending may make any of the following orders:  (C) An order striking out pleadings, or parts of them . . . ."  In reviewing the record, the Court determines that sanctions are warranted.

After a hearing on December 6, 2006, Defendant, Equifax, was ordered by this Court to produce the documents as directed in Plaintiff's Motion to Compel Discovery Responses, dated November 22, 2006. The Order on Plaintiff's Motion to Compel Discovery Responses dated November 22, 2006, was entered by the Court on December 13, 2006. Pursuant to the Order, Equifax was ordered to produce all frozen scans related to plaintiff, Angelina G. Williams, social security number xxx-xx-4912 or social security number xxx-xx-4921.

The practical result of this Court's Order was the requirement that Equifax produce all frozen scans from January 2000 for Angela Williams or Angelina Williams with the following file since dates: April 29, 1987, November 14, 1995, October 1, 1989, and September 14, 2001. These reflect the dates when these so-called files were created by Equifax. These "files" contained the personal account information of Angela Williams but some of the "files" were primarily the files of Angelina Williams.

Rather than complying with the Court's Order, Equifax failed to timely produce all of the frozen scans. In fact, Equifax shifted the burden to the Plaintiff and her counsel to constantly petition and request to get the frozen scans. Although some of the frozen scans were delivered to plaintiff's counsel on November 22, 2006, the date of the hearing on Plaintiff's Motion to Compel Discovery Responses, numerous other frozen scans were not produced or withheld as reflected in emails dated December 7, 2006, January 4, 2007, January 10, 2007, January 31, 2007, February 7, 2007, and March 1, 2007. Copies of all of these emails are attached to Plaintiff's Motion for Sanctions.

In March 2007, Equifax produced additional frozen scans[1] but plaintiff noticed that at least 8 months of scans were not produced as reflected in an email of July 6, 2007. On July 6, 2007, Equifax's counsel, Lewis Perling, suggested that he recalled some form of compromise as to scans not produced and sought to put the burden on the plaintiff to point out what scans had not been included. Plaintiff's counsel responded in an email of July 9, 2007 as follows: **"Please ensure that you provide all frozen scans. We need them and have not agreed to take**

---

[1]   Although the March 2006 production occurred months after the Court's Order of December 13, 2006, Annette Simpson testified in this case that it took her only five days to pull the 73 separate frozen scans that were not produced beforehand.

anything less in this case.  In fact, that was a basis of our motion to compel and the Judge agreed.  Please advise if we need to go back before the judge on this issue."

On August 9, 2007, plaintiff's counsel learned in the deposition of Annette Simpson, a corporate representative of Equifax, testified that Equifax did not have a valid explanation as to why so many frozen scans, a key component of Plaintiff's case, were not produced. See page 73, lines 12-18, page 82, lines 14-16.  And that Equifax had the ability to obtain those scans.  See page 73, Line 23-25., page 82, lines 17-18.  Later, she testified that she could just search for them.  See p. 92, lines 7-15.

Although not required to do so, Plaintiff's counsel sought to give Equifax a final opportunity to cure any deficiencies and to act in good faith.  However, the additional frozen scans were not forthcoming.

On August 15, 2007, Plaintiff's counsel again requested additional frozen scans not produced although they were ordered to be produced in the Court's Order dated December 13, 2006.   Another attorney for Equifax, Ann Broussard, responded on August 20, 2007, with five more pages of frozen scans. See bates numbers EFX00904 through EFX00909.  However, more were still missing.  Equifax was aware of the existence of the frozen scans that had not been produced.  However, Equifax did not produce any additional documents until plaintiff's counsel made mention of the problem during the Motions in Limine hearing held on August 23, 2007.

On August 23, 2007, a hearing on the parties' motions in limine was held before this Court.  During the hearing, plaintiff sought to exclude Defendant from introducing into evidence documents that were not produced by Defendant including frozen scans.  The Court granted this motion. See Paragraph 2 of the Order on Plaintiff's Motion in Limine, dated September 4, 2007.

During the hearing on August 23, 2007, the Court allowed an additional deposition to be taken of Equifax's representative to inquire as to why scans were not produced. As reflected in the transcript of the August 23rd hearing, Equifax's counsel advised that **counsel had produced the frozen scans provided by Equifax.** See page 7, lines 1-17. Equifax's counsel further advised the Court on August 23rd that **after** the deposition on **August 9th, Equifax's representative, Annette Simpson "went back, had looked for additional scans, was unable to locate any additional scans."** See p. 8, lines 8-21.

At that same hearing on August 23, 2007, Angela Williams' counsel pointed out that there was still a large gap and the Court advised that there was no reason why these additional scans should not exist. See page 10, lines 4-17 of hearing transcript. Equifax's counsel advised that **"we specifically asked Equifax to go back and look."** See page 11, lines 2-4. Equifax's counsel advised the Court that "Your Honor, its not that scans weren't produced during that time; it's that scans weren't produced for that particular file-since date." See page 11, lines 16-19. Equifax's counsel told the Court that "There's more than one file-since date for that time, and **Equifax simply does not have those records going back to that time."** See page 11, lines 21-24. The Court questioned how Equifax could have a file since date frozen scan for the time periods before and after. In response Equifax's counsel said **"They don't have one that has a file-since date of that particular date."** Angela Williams' counsel advised that there was a big gap for the 1995 file since date and Equifax should not be able to withhold things. Page 13, lines 8-20. He pointed out that there was an order already compelling production of these scans. See Page 14, Lines 16-29. The Court ruled that if the scans were not produced, Equifax could not offer those documents. Page 15, Lines 2-5.

Angela Williams' counsel asked for a deposition of the person that is in charge of these records and Equifax's counsel advised that the person with most knowledge was Annette Simpson, who had already testified for Equifax.  See p. 17, lines 5-18.  Equifax's counsel reiterated that **Equifax produced "everything that Equifax could find."**  See p. 18, lines 4-9.  Equifax's counsel reiterated at the August 23rd hearing that counsel had "**asked Equifax for those files.  <u>Ms. Simpson has responded by saying that those files simply don't exist</u>**. She's looked for them and, you know, she has a technical explanation which I won't try to endeavor to explain here."  See page 18, lines 9-14. (emphasis added).  Equifax's counsel finally advised the Court in the August 23rd hearing as it related to this issue that "**during the deposition of Ms. Simpson [on August 9th] what I said, your honor was, we will go back and look again for the specific files that you're now claiming are missing.  We will produce those if they exist and you can depose our witness**" See p. 19, lines 9-20.

At the conclusion of the arguments on this issue at the hearing held on August 23, 2007, the Court admonished Equifax to give testimony as to why missing scans had not been produced despite the Court's order.

After Equifax was informed that plaintiff's counsel would be allowed to inquire as to why the missing scans had not been produced at the hearing on August 23, 2007, Equifax produced 333 pages of frozen scans on August 25, 2007 via an email.  This came over 8 months after the Court's Order, after the Court became involved twice, after the discovery cut-off and on the eve of the trial.  In this case, by plaintiff's calculation, Equifax produced 113 scans after the Court's Order but withheld 73 scans until after the discovery period.

**Equifax's belated explanations are just not credible.**  There are **inconsistencies between sworn testimony between Equifax's representative and what was told to the Court**

by Equifax's counsel at the hearing on August 23, 2007. Equifax's representative testified that she was not told by counsel to start looking for the missing frozen scans on August 20, 2007 but Equifax's counsel repeatedly promised the Court on August 23rd, 2007 that Equifax had already looked again for the missing scans after Annette Simpson's deposition on August 9th but could not find any additional documents. Presumably, if Annette Simpson was working ten hours a day between August 20 and August 25, 2007 producing the scans, then some of these "missing" scans were in Equifax's hands when Equifax's counsel advised the Court that Equifax had searched for them and Annette Simpson had told him no further frozen scans could be found. After the Court ruled that plaintiff could make further inquiry, these "missing" scans materialized on Saturday, August 25th.

In this case, the evidence supports a finding that Equifax acted in willful disregard or gross indifference to the Court's order. There is also evidence of bad faith by Equifax. Equifax waited almost four months to even begin to comply with the Order requiring production of all frozen scans. Equifax withheld more than 70 scans, despite plaintiff's demand that it provide all the scans and comply with the Order.

At the deposition of Annette Simpson on August 9, 2007, Equifax acknowledged there were missing scans and said it would provide them. Yet, Equifax waited *eleven days*, until August 20, 2007, before it allegedly even requested those scans.[2] (In her deposition on Monday, August 27, 2007, Ms. Simpson testified: "I made the request Monday of last week." Simpson Depo., Part 3, p. 8, l. 24.)

---

[2]  Equifax apparently lied to its counsel, Mr. Haskins, who advised the Court on August 23, 2007 that after Ms. Simpson's deposition on August 9, 2007, Equifax went back and looked and could find no more scans. Again, the withheld scans were received two days later on August 25, 2007 after the Court expressed skepticism as to why there was no explanation for the scans that were not produced during certain time periods and ordered that plaintiff be allowed another deposition of Equifax to see if there was a good explanation.

That eleven day delay is inexcusable.  Equifax's corporate representative knew, at the latest, on August 9, 2007 that many months of frozen scans had not been produced despite a court order and that plaintiff was in the process of taking depositions and a trial was upcoming. There was no good reason for the delay.  By waiting eleven days to request the scans, fully aware that it would take five days to obtain them, Equifax guaranteed that they would not be provided to plaintiff until about a week before the trial, much too late to be of use.  This Court will not allow Equifax to rewrite the discovery rules or the Court's Order on the Motion to Compel.

Equifax claimed on August 23rd that it had checked for the documents and could not find them. Equifax was callous in not even obtaining the scans when it was reminded of the Court's Order in Annette Simpson's deposition on August 9, 2007 but, according to Annette Simpson, did not even begin to check again for the missing scans until counsel told them to on August 20, 2007.

In the subsequent deposition of Equifax's representative, Annette Simpson, taken on August 27, 2007, plaintiff's counsel asked about the missing scans.  These frozen scans were marked in the deposition as Exhibit 200.  Annette Simpson testified that **Equifax requested these frozen scans from the system on [August 20, 2007]**. See page 8, lines 11-25. The only reason given for the 10 day delay [from after her deposition was concluded] in seeking to obtain the missing scans was that Equifax's counsel allegedly had to identify which ones were needed. See page 16, Lines 10-21. Equifax's representative advised that she spent five days from August 20, 2007 until August 25, 2007 retrieving the scans.  Page 17, lines 13-22.  Equifax's representative, Annette Simpson, advised that **Equifax did not begin looking for the "missing" scans after her deposition [on August 9, 2007] until directed by counsel [on August 20, 2007]**. See page 20, Lines 1-4. This statement contradicts what Equifax's counsel told the court

at the hearing held on August 23, 2007, during the five days Ms. Simpson allegedly was gathering the scans. Equifax's counsel reiterated that **Equifax produced "everything that Equifax could find."** See hearing transcript, p. 18, lines 4-9. Equifax's counsel reiterated that counsel had "asked Equifax for those files. **Ms. Simpson has responded by saying that those files simply don't exist.** She's looked for them and, you know, she has a technical explanation which I won't try to endeavor to explain here." See hearing transcript, page 18, lines 9-14. (emphasis added)

Ms. Simpson testified that **she did not know why those frozen scans (333 pages) were not produced** before and no one at Equifax could answer that question. See Page 20, Lines 8-18, Page 21, Lines 4-5. In fact, she testified that **Equifax could have been produced the "missing" scans six months earlier.** See page 17, lines 18-22. This is remarkable given the Court's admonishment to Equifax's counsel on August 23rd that it have a witness who could testify why the missing scans were not produced. After she testified she had no such knowledge, Equifax has filed an affidavit by her purportedly giving an explanation which contradicts her testimony and suggests an indifference to this Court's orders.

There is no justification for Equifax withholding of 73 separate frozen scans until August 25, 2007, eight days before the original trial date, and over 8 months after the Order on Plaintiff's Motion to Compel Discovery Responses was signed. These frozen scans are material to Plaintiff's claims against Equifax and Plaintiff has been prejudiced by failure of Equifax to produce the ordered discovery.

It was only after the Court became involved <u>a second time,</u> that the records were obtained. Equifax's explanations, as set forth above, do not establish any valid excuse for its conduct. When the "missing" scans were finally produced, they were obtained after the

discovery cut-off and on the eve of trial.  Equifax's conduct was willful, plaintiff has been prejudiced in her trial preparation, and Equifax should be sanctioned.

As set forth in Plaintiff's Motion for Sanctions, **Equifax has been admonished for this type of behavior by federal judges very recently.**  One federal judge advised Mr. Perling that his client's conduct, which included the untimely production of frozen scans, was "completely at odds with the standards to which the court as a whole, not just this division, hold counsel and their clients to get discovery done in an appropriate and timely manner so that the case can be litigated on its merits."  See page 17 of the Transcript of the Hearing on Sanctions, dated April 20, 2007, in *Robinson v. Equifax*, Case No. 06-cv-1336, E.D. Va. which is attached to Plaintiff's Motion as Exhibit A9.

Equifax's conduct has been harshly questioned by other judges under similar circumstances.  See the Order dated July 23, 2007 attached as Exhibit N to Plaintiff's Motion for Sanctions.  In that case, the Senior United States District Judge was so outraged by Equifax's that he required a representative of the CEO to be present in the Court as well as Equifax's General Counsel, Kent E. Mast.  More importantly, after being admonished for the impropriety and inappropriateness of Equifax's discovery conduct, Equifax's general counsel reassured Judge Payne that there would be no such conduct in the future.  It is clear from the Order that Judge Payne was going to enter harsh sanctions against Equifax had it not settled the case.

Unfortunately, Equifax's conduct has not stopped.  It continued in this case.  It represents a pattern of flouting discovery orders.  Equifax had a legal obligation to produce *all* the scans.  Plaintiff repeatedly requested that Equifax comply with the Order but Equifax delayed sending additional scans until March 2007.  As Ms. Simpson testified, Equifax could have produced all of the frozen scans in March 2007, or even in February 2007, six months prior to her deposition.

Yet, Equifax withheld 73 scans. Since there is one scan per month, that is *more than six years* of scans although multiple files are involved.

Much of Equifax's argument is based on the implication that it was okay to violate the Order so long as plaintiff did not discover it and notify Equifax. That is wrong both on the facts and the law. Once the Court ordered Equifax to produce all of the frozen scans, Equifax was required to do so. Plaintiff did not, and indeed could not, alter that legal obligation. Equifax is a large sophisticated corporation with extensive experience in litigation. When it is ordered by this Court to produce documents relevant to a consumer's claim, it can choose to obey the order or not to obey it. Here it chose not to obey it. It withheld more than 70 scans.

As set forth in detail in Plaintiff's Motion for Sanctions, plaintiff repeatedly asked Equifax to comply with the Order. Equifax delayed and delayed and then, after almost four months, produced only some of the required scans. Plaintiff continued to demand all of the scans. When an issue arose about missing scans, plaintiff insisted on receiving all the scans and reminded Equifax of its obligation under the Court's order. Plaintiff's counsel sent an email to Equifax's counsel which stated in part: "Please ensure that you provide all frozen scans. We need them and have not agreed to take anything less in this case. In fact, that was a basis of our motion to compel and the Judge agreed." Ex. K to Plaintiff's Motion for Sanctions.

This was sent seven months after the Court ordered Equifax to produce all of the scans. Plaintiff was still trying to get all the scans the Court ordered. Equifax did not provide them.[3]

Equifax's complaint that plaintiff's counsel refused to identify the missing scans at Annette Simpson's deposition is disingenuous. Equifax knew which scans had not been

---

[3]   Equifax says that on March 5, 2007 after receiving frozen scans, plaintiff's counsel advised he would review the production the following day to confirm that he had them all. P. 6. The correspondence, however, indicates that plaintiff's counsel was stating that he would review to see that he had received everything that Equifax had promised it had sent.

produced and had greater knowledge than plaintiff of its record keeping system. That knowledge allowed Equifax to easily identify and obtain the "missing" scans, when it belatedly decided to do so. Importantly, Equifax only decided to produce those scans after this Court told counsel in the hearing on August 23rd (two days before the scans were produced), in the face of repeated assurances from Equifax's counsel that Equifax had looked for any other scans that might be responsive and could find none, that plaintiff's counsel could take a deposition to find out why scans that should exist had not been produced.

Equifax has been sanctioned for similar misconduct. Plaintiff has filed pattern evidence in the case of *Robinson v. Equifax* with her Reply. The remainder of this paragraph and the next includes cites to those documents. Plaintiff had to file a motion to compel to get scans relating to the other person who was being reported on Ms. Robinson's credit report. At the hearing on the motion to compel, Lewis Perling, counsel for Equifax, advised that producing scans was time consuming, extremely costly and difficult. See p. 7 of Hearing Transcript, dated April 20, 2007. Nevertheless, Equifax produced some scans at the motion to compel hearing. The federal judge granted the Motion to Compel.

After the Order was entered, Equifax produced many more scans but still withheld others and plaintiff sought sanctions and warned that as of the hearing on the motion, it would only be three weeks before trial. The motion for sanctions discussed how the scans help form the pieces of a puzzle and Equifax does not want the puzzle solved. The motion pointed out that Equifax does not want to look for the scans because then it can deny actual knowledge of what it did wrong. Like this case, Equifax defended the violations by saying that plaintiff should have pointed out what was missing. See page 5 of Equifax's Brief in Response to Plaintiff's Motion for Sanctions.

At the hearing on the motion for sanctions, Equifax said that it stood behind its full and complete responses much the same way Mr. Haskins advised the Court on August 23rd that all scans in Equifax's possession had been produced. **Mr. Perling advised that case law allows Equifax to come into the court and say "this is all we have, we are fully complying with the discovery by providing all that we have."** See page 9 of the May 11, 2007 Transcript of the Hearing on Motions, a copy of which is attached to this Reply as Exhibit "B" as well.

Judge Jones of the Eastern District of Virginia was not impressed as set forth in the transcript. He stated that

> THE COURT: ....**a skeptical view of the situation here would be that Equifax has not produced everything it has. It has produced everything that it has found.** And Ms. Simpson's declaration is perfectly conducive to this reading, they have produced what they have found as a result of the effort that they have made.
> MR. PERLING: **Exactly, Your Honor.**
> THE COURT: **Not necessarily everything that's there.**
> MR. PERLING: I can't disagree with your honor....And that's how discovery works. You get full and complete responses that the client says, that Equifax says these are full and complete. **And the way discovery works is if he wants to try to impeach them or, you know, show where he thinks the facts are differently, that's what litigation is about.**
> THE COURT: The way discovery works is that he is entitled to all the documents that Equifax has that are relevant to the claims and defenses of the parties and are not subject to some protective order. And I am not satisfied at all that he has all the documents that Equifax has that fall into that category....
> THE COURT: Equifax's conduct in the discovery phase of this litigation has been a little short of unconscionable. **And the only reason that I am inclined to do anything other than strike Equifax's answer is that plaintiff's counsel has had the good judgment not to ask for that drastic relief.** I find that at least the relief, specifically including striking the affirmative defenses, that at least the relief that plaintiff asks for in her memorandum at page 16 is appropriate....But on that initial finding, the **Court grant's the motion for sanctions, strikes the affirmative defenses,** and takes the matter under advisement for the purposes of making further findings as soon as reasonably possible after the depositions are completed. (Pages 9-12)(emphasis added).

Similarly in this case, at the hearing on the Motions in Limine, plaintiff raised Equifax's failure to produce all of scans. Plaintiff requested a deposition to obtain an explanation about the missing scans. The Court agreed and ordered Equifax to produce the person in charge of the

scans. Equifax's counsel identified Annette Simpson as the witness. The Court questioned whether she was the person with the most knowledge and Equifax's counsel indicated she was. The Court asked whether she was going to say she didn't know. Equifax's counsel said that she would not say that. Transcript of Hearing on August 23, 2007, p. 18, l. 5-23[4]. The Court later reiterated that plaintiff was entitled to depose a witness who would provide an explanation: "Absolutely, absolutely. And whether its technical or otherwise, you are entitled to an explanation as to why its not there." Transcript of Hearing, p. 20, l. 25, p. 21, l. 1-3.

Pursuant to that order, plaintiff took the deposition of Annette Simpson. Plaintiff asked Ms. Simpson if she knew why the scans that were recently produced were not in the first group of scans. She replied, "No, I don't." Simpson Depo., Part 3, p. 20, l. 15. Plaintiff then asked if there was anybody at Equifax who would know the answer to that question. Ms. Simpson replied, "Not that I know of." Simpson Depo., Part 3, p. 20, l. 16-18.[5]

Now, in response to plaintiff's motion, Equifax has submitted an affidavit from this same witness, Annette Simpson, in which she contradicts her sworn testimony and attempts to provide an explanation for the violation of the Order. Equifax has again chosen to withhold information from plaintiff that this Court ordered be disclosed. Equifax should not be allowed to submit an affidavit with an explanation when the same witness told plaintiff there was no explanation.

In addition, Equifax's "explanation" is hardly credible. Equifax states that there was a "pack redistribution" which "may be the reason" that all the frozen scans were not produced.

---

[4] This deposition excerpt is attached to the Notice of Filing Excerpts of the August 9, 2007, and August 27. 2007, Depositions of Annette Simpson, and Excerpt of the Transcript of August 23, 2007 Proceedings Held Before Judge Sprinkel In Support of Plaintiff's Motion for Sanctions Against Equifax For Willful Discovery Violations, which was dated September 4, 2007. The original was filed with the clerk and a courtesy copy was provided to the Court.
[5] This testimony that there was no explanation for failing to produce these scans, combined with Ms. Simpson's testimony that the withheld scans were always available to Equifax, and that Equifax could have obtained them six months earlier led plaintiff to file the motion for sanctions.

Equifax contends that this redistribution occurred in September and October 2004. The first group of scans were produced more than two years after this redistribution. This group included scans from all the years from 2000 to 2006, although there were large gaps for some of the files. There is no apparent connection between the scans that were originally produced, the missing scans, and some event that occurred in September and October 2004.

Plaintiff was prejudiced because her trial team had to spend precious trial preparation time to review so many scans on the eve of trial, because plaintiff had to file a motion for sanctions to address this conduct, because plaintiff did not have all of the pieces of the puzzle after the Court ordered Equifax to provide those to the plaintiff, that the plaintiff had to take an additional deposition of Equifax's representative, Annette Simpson, shortly before trial was scheduled to start. Plaintiff discovered in the frozen scans that were untimely produced that Equifax had finally attempted to cross block a social security number on one of the credit files containing plaintiff's personal account information. The withheld documents appear to show that this procedure was implemented in November 2006. See Bate Stamped Document EIS WIlliams 1199. This document will not be included in the record because it has plaintiff's personal information.

This case is about the inaccurate information that Equifax put on plaintiff's credit reports. The frozen scans are snapshots of those reports and show all the information in Equifax's various files on plaintiff and Angelina Williams, for every month from January 2000 through December 2006. This information is invaluable to plaintiff's case because plaintiff does not have credit reports for all those months. Generally, plaintiff only has a few credit reports from each year. And these reports are often based on only one of plaintiff's multiple files, so they do not show all the information Equifax is reporting. Moreover, plaintiff does not have the credit reports that

Equifax sent out to people who requested information on plaintiff or Angelina Williams. Because the frozen scans are made every month, they contain all this information.

In addition, the frozen scans list all of the persons who received plaintiff's credit reports. Again, all these persons are not listed on credit reports plaintiff received because she was often only getting information from one of her multiple files. The frozen scans also show actions taken by Equifax, or Equifax's failure to take action, to correct the errors on plaintiff's reports.

Equifax's failure to produce 73 scans until the last minute prevented plaintiff from learning all the information that was in her file, all the companies that received her information, and all actions taken by Equifax, for a period covering 73 separate months.

Each scan contains an enormous amount of information. They include the consumer's name, former name, address, former address, date of birth, social security number, employer, former employer, a file-since date, a file activity date, and any special messages such as promotional blocking. The frozen scans include a list of all companies that have received reports based on that file for the previous two years. The frozen scans also include a list of all of the accounts in the file, all the account information, and an indication whether that account is being reported or whether it is being suppressed (not reported). To determine what is on the scan, each of these items must be reviewed. That takes a substantial amount of time.

Moreover, each scan cannot be considered in isolation. The credit reports change as information is added, accounts are deleted or suppressed, and other information is revised. Each scan must be compared with the scans that came before it and after it chronologically. Because there were multiple files, each scan must also be compared with the other scans for that same month. For example, if plaintiff is examining a scan from March 2002, she must compare it with

the scans for that file from February 2002 and April 2002, and also compare it with March 2002 scans for other files.

Plaintiff received the 73 scans on Saturday when the deposition was scheduled for Monday. Even working the entire weekend, plaintiff's counsel and his legal assistant did not have sufficient time to review the 73 new scans, compare them with the other scans and prepare questions for the deposition witness. Affidavit of Kachelle Baxter, ¶¶ 2-5. In addition, Equifax's witness had not compared the contents of the new scans with the old scans. Simpson Depo., Part 3, p. 47, l. 22-25. So plaintiff could not ask the witness all the questions relating to changes or differences between the information on the new scans and information on the old scans.

A useful analogy is to compare the scans to pieces of a puzzle. If they are reviewed closely and put together in the right order, they form a clear picture. By withholding 73 scans, Equifax kept plaintiff from looking at approximately 40 percent of the puzzle.

Equifax's withholding of 73 scans also greatly diminished the usefulness of the first deposition of Annette Simpson. Plaintiff attempted to go through the scans with the witness but because so many were missing, she was not able to explain why certain information had changed over time. For example, there was a large gap in the scans of one file between the end of 2002 and October 2004. Ms. Simpson testified that the subject of the October 2004 scan was a different person than the subject of the scans from that same file in 2002. However, because of the large gap, she could not explain what had happened to cause the file to change subjects. Simpson Depo., Part 2, p. 70, l. 2-22. The withholding of 73 scans prevented plaintiff from reviewing all the scans chronologically with an Equifax witness and obtaining a full understanding of her Equifax files and the facts necessary to fully prepare her case.

Equifax is mistaken in asserting that the withheld scans were not important to plaintiff's case. Equifax mentions only the scans from plaintiff's file during 2004 to 2006. First, those scans comprised only 27 of the 73 missing scans. The additional scans also included many from 2000 to 2003 which are critical to plaintiff's case because they cover a time period when plaintiff was actively seeking credit, she was mixed with Angelina Williams, and one of her files was merged with a file belonging to Angelina Williams. This group also includes scans from the gap referred to above during which Equifax says the subject of the file changed from plaintiff to Angelina Williams.

The scans from the end of 2004 through 2006 for Angela Williams are also relevant to the case. The fact that plaintiff testified that she received credit reports during those years and they were "clean" does not make the scans irrelevant. Plaintiff saw only three reports from that time, two in 2004 and one in 2006. Plaintiff did not see her credit report in 2005. Credit reports are constantly changing. Equifax may have put false information on plaintiff's credit report after she received one of the "clean" reports in 2004, which could have been deleted by the time she received her report in 2006. Plaintiff must obtain all of the scans so she knows *all* of the information that was in her file and being reported about her.

It is also important to get the scans from one file, even if it appears "clean" because plaintiff had multiple files. It is critical for plaintiff to be able to compare the different files, particularly with regard to information that she disputed and Equifax said was deleted. One of plaintiff's claims is that Equifax would suppress an account that she disputed, tell her that it was deleted, but leave it on one of her other files so that it continued to be reported about her to creditors. Plaintiff must have all of the scans from all of the different files in order to compare specific accounts and determine if they are suppressed on one file but not another.

Plaintiff has requested that the Court either strike Equifax's answer or refuse to allow Equifax to assert its affirmative defenses. Both of those sanctions are expressly authorized under Fla. R. Civ. P. 1.380. That rule provides that if a party fails to obey a prior order to provide or permit discovery, the court may enter an order refusing to allow the disobedient party to support designated defenses. Fla. R. Civ. P. 1.380(b)(2)(B). The rule also provides that the court can enter an order striking pleadings or entering a default judgment against the disobedient party. Fla. R. Civ. P. 1.380(b)(2)(C).

Striking a pleading is the most severe sanction. It may only be employed where there has been "a deliberate and contumacious disregard of the court's authority . . ., bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness." *Mercer v. Raine,* 443 So. 2d 944, 946 (Fla. 1983).

The alternative sanction of refusing to allow Equifax to assert affirmative defenses, is much less severe. The court need only find that there was a failure to comply with the discovery order, rather than willful disregard, gross indifference, or bad faith.

Additional evidence of bad faith is Equifax's testimony in deposition on August 27, 2007. The Court had ordered that Equifax produce a witness to explain the failure to produce all of the scans. Equifax offered Ms. Simpson who said she did not know why the scans were not produced and she was not aware of anyone at Equifax who did. Simpson Depo., Part 3, p. 20, l. 8-18. Yet, in its response to plaintiff's motion, Equifax offers an affidavit of Ms. Simpson in which she attempts to provide an explanation, completely contradicting her sworn testimony on August 27, 2007. In addition, bad faith is also shown by Equifax telling its lawyer, Stewart Haskins, that it had looked after the August 9th deposition and it did not have any more scans.

Equifax cites *Kozel v. Ostendorf*, 629 So. 2d 817 (Fla. 1993). In that case, the court set forth six factors that should be considered in determining whether to strike a party's pleadings when that party's *attorney* has committed discovery violations. In plaintiff's case, it is Equifax that failed to comply with the Court's order. Thus, *Kozel* is not applicable.

Yet, if the *Kozel* factors are considered, they support striking Equifax's answer. In regard to the first factor, the evidence shows that the disobedience was willful, deliberate, or contumacious rather than an act of neglect or inexperience. For the second factor, Equifax has been previously sanctioned for the same type of misconduct in the *Robinson* case as set forth above.[6] For the third factor, Equifax was personally involved in the act of disobedience. On the fourth factor, the delay prejudiced plaintiff through lost evidence and an inability to fully prepare her case. As to the fifth factor, Equifax has not offered reasonable justification for the withholding of the scans. Finally, on the sixth factor, the failure to comply with the order created significant problems of judicial administration. Equifax's violation of the Order had to be addressed at the hearing on the Motions in Limine, a second deposition had to ordered by the Court, plaintiff could not adequately prepare for trial, and the trial was postponed so the Court could consider the appropriate action in response to Equifax's violation of the Order.

The striking of Equifax's answer is justified. Although it is a severe sanction, Equifax can still defend the case on the issues of the actual damages suffered by plaintiff and the amount, if any, of punitive damages.

The alternative sanction of not letting Equifax assert its affirmative defenses is much less severe and allows Equifax to defend the entire case including liability, causation, damages, and

---

[6] Equifax did not change its discovery tactics in this case even though it was sanctioned in the Eastern District of Virginia on March 31, 2006 in the *Sloane* matter and again on May 11, 2007 in the *Robinson* matter as set forth above. Indeed, it was engaging in similar conduct in this case at the very same time.

punitive damages. The Court has already ruled that the events preceding September 26, 2001 are admissible. Barring Equifax from asserting the affirmative defense of the statute of limitations will not change the evidence that is presented at trial. The Court will simply has to fashion a different jury instruction or two and a slightly different verdict form than the ones originally contemplated.

Equifax has previously been warned that it could face the striking of its defenses or Answer as a result of its refusal to produce responsive documents and deposition witnesses. In Moore v. CSC (and Equifax), Civ. No. 2:02cv303 (E.D. Tex. 2004), the court warned Equifax and its then Kilpatrick Stockton (now King and Spalding) attorney Lewis Perling: "But let me tell you that the next sanction if your client fails to comply with this sanction, will be even more severe. It will be more in the nature of striking defenses and if that doesn't get their attention then we will just enter a judgment by default on liability[.]" See page 14 of Exhibit A to Plaintiff's Reply to Defendant's Equifax's Response to Plaintiff's Motion for Sanctions.

Based on the foregoing, the Court determines that the following sanctions are appropriate for Equifax's misconduct relating to its failure to comply with this Court's Order.

*Court hereby strikes Defendant's Answer and reserves jurisdiction for additional Court sanctions.*

IT IS SO ORDERED.

DATED this 19 day of _____Nov_____ 2007.

Honorable George A. Sprinkel IV
Circuit Court Judge